UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CHRISTOPHER  ESTRADA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-149 |
| | § | |
| JIMMY COTI WHITE | § | |
| | § | |
| Defendant. | § | |

**ORDER DENYING DEFENDANT'S
MOTION TO DISMISS FOR FAILURE TO EXHAUST**

Pending is Defendant's motion for summary judgment to dismiss Plaintiff's excessive force claim for failure to exhaust administrative remedies.  (D.E. 44).  Plaintiff has filed a response in opposition.  (D.E. 48).

For the reasons stated herein, Defendant's motion is **DENIED**.

## I.    JURISDICTION.

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Upon consent of the parties, (D.E. 12, 19), this case was referred to the undersigned United States Magistrate Judge to conduct all further proceedings, including entry of final judgment.  (D.E. 33).  *See* 28 U.S.C. § 636(c).

## II.    PROCEDURAL BACKGROUND.

Plaintiff Christopher Estrada is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and he is currently incarcerated at

the Stevenson Unit in Cuero, Texas, although his complaint involves events that arose while he was confined at the Nueces County Jail.

On April 30, 2014, Plaintiff filed his original complaint alleging claims of excessive force against Nueces County Deputy Officer Jimmy Coti White and failure to protect against a John Doe Defendant.  (D.E. 1).  On May 16, 2014, Plaintiff amended his complaint to identify the John Doe Defendant as Jim Kaelin, Sheriff of Nueces County.  (D.E. 6).

On June 11, 2014, Plaintiff filed a motion to amend complaint to clarify that he was raising federal claims only, and not state law claims.  (D.E. 10).

At a June 18, 2014 *Spears*[1] hearing, Plaintiff's was granted leave to amend his complaint to raise federal claims only and to dismiss any claims of negligence.

On August 8, 2014, Nueces County intervened and filed a motion to dismiss any claims brought against Defendant White in his official capacity.  (D.E. 16).

On November 6, 2014, the Court dismissed Plaintiff's claims against Officer White in his official capacity.  (D.E. 36).  In addition, Plaintiff voluntarily dismissed his claims against Sheriff Kaelin and Nueces County.  (D.E. 36, p. 4).

On March 6, 2015, Defendant White filed the instant motion for summary judgment to dismiss Plaintiff's excessive force claim against him on the grounds that Plaintiff failed to exhaust his administrative remedies as is required by 42 U.S.C. §1997e(a).  (D.E. 44).

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

On March 26, 2015, Plaintiff filed his response in opposition, (D.E. 48), to which Defendant filed a reply, (D.E. 51), and Plaintiff filed a sur-reply.  (D.E. 54).

## III.   EVIDENCE OFFERED.

In support of his motion for summary judgment, Defendant White offers the following evidence:

Ex. A:      Copy of Nueces County Jail Inmate Rules and Regulations Handbook (D.E. 44-1, pp. 2-20);

Ex. B:      Nueces County's Grievance Policy (D.E. 44-2, pp. 2-3); and

Ex. C:      Affidavit of Officer Patricia Gamez, correctional officer with Nueces County Jail, who is responsible for addressing grievances filed by inmates and detainees at the Nueces County Jail (D.E. 44-3, pp. 1-19).

In his response, Plaintiff offers the following:

Ex. A:      Inmate Communication Form (ICF) dated 10/29/13 (D.E. 48-1, p. 1);

Ex. B:      ICF dated 10/30/13 directed to Mitchell (D.E. 48-1, p. 2);

Ex. C:      ICF dated 10/31/13 titled "Follow-up Grievance" (D.E. 48-1, p. 3);

Ex. D:      ICF dated 1/16/14 directed to Ms. Gamez (D.E. 48-1, p. 4);

Ex. E:      Interoffice memorandum dated 10/29/13 regarding use of force on Plaintiff (D.E. 48-2, p. 1);

Ex. F:      Interoffice memorandum dated 10/30/13 requiring Officer White to respond to Plaintiff's allegations of excessive force (D.E. 48-2, pp. 2-3);

Ex. G:      Affidavit of Patricia Gamez (D.E. 48-2, pp. 4-6);

Ex. H:      Copy of Nueces County's grievance policy (D.E. 48-2, pp. 7-9); and

Ex. I:      Statement of Defendant White dated 10/30/13 (D.E. 48-2, p. 10).

Considering the evidence in the light most favorable to Plaintiff[2], the summary judgment evidence establishes the following regarding the October 29, 2013 use of force (UOF) and Plaintiff's efforts to grieve the matter to jail officials.

### A.  The Use of Force.

On August 3, 2013, Plaintiff arrived at the Nueces County Jail.  Because he is a former gang member, Plaintiff was housed in lockdown and not in general population.

On October 29, 2013, Plaintiff met with his attorney in a locked attorney booth. After his attorney left, Plaintiff remained locked in booth for approximately two more hours.  Plaintiff then needed to use the restroom and he began jiggling the door handle in an attempt to get a guard's attention.  Officer White, who was not working on Plaintiff's, observed him and became irritated.  Officer White told Plaintiff to be quiet, and Plaintiff related that he needed to use the restroom.  Officer White told Plaintiff to relieve himself there in the attorney booth.  Thereafter, Officer White went and got the keys to the attorney booth, opened it, and stood directly before Plaintiff.  Plaintiff immediately put his hands behind his back in submission while Officer White applied the restraints. Officer White began escorting Plaintiff to his cell when, without warning, Officer White grabbed Plaintiff and slammed his head into a wall and then into steel bars, until Plaintiff fell to the floor.  Officer White then dropped on top of him and dragged Plaintiff to his

---

[2] *See Scott v. Harris*, 550 U.S. 372, 378 (2007)(For purposes of deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party);  *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000)(A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment).

cell.  Plaintiff was taken to the infirmary later that evening for medical attention, and again the next day.  Plaintiff's injuries included a black eye, busted lip, knots on his head, bruising and a sore hand.

The use of force (UOF) was captured on a video recording.  In addition, two officers observed the incident and gave statements verifying Plaintiff's rendition of the events: that he had not instigated a UOF or resisted Officer White and that Officer White had used excessive force against him.

### B.    Plaintiff's Communications with Jail Officials.

On October 29, 2013, Plaintiff filed an Inmate Communication Form (ICF), and under services requested, Plaintiff checked "GRIEVANCE OFFICER."  (D.E. 48-1, p. 1). Under "Narrative," Plaintiff detailed the assault by Officer White and requested an investigation as well as medical assistance.  (D.E. 48-1, p. 1).  There is no response to the October 29, 2013 ICF.  (D.E. 48-1, p. 1).

On October 30, 2013, Plaintiff filed an ICF stating:

> I want it on record that I have tried to see Medical due to having seizures because Officer Coti White assaulted me.  I need to talk to Internal Affairs about the treatment I am getting!  When I was slammed/assaulted by Coti White they brought me to my cell instead of taking me to the infirmary.  My head hurts really bad.  Please help me!

(D.E. 48-1, p. 2).    The written response on the ICF states that Plaintiff was scheduled to be seen in Medical that day.  (D.E. 48-1, p. 2).  A second notation states that Plaintiff was taken to "2d floor medical on 10/29/13 where you were checked and cleared by Medical Staff." (D.E. 48-1, p. 2).

On October 31, 2013, Plaintiff filed an ICF where he checked the subject matter as "GRIEVANCE OFFICER," and hand wrote "FOLLOW-UP ON GRIEVANCE."  (D.E. 48-1, p. 3).  Plaintiff wrote:

> I wrote a grievance against Officer Coti White because he assaulted me on 10/29/13 on or about 2:30 p.m. on the 4th floor at north crash gate…it is on camera that I had my hands behind my back the entire time Officer Coti White assaulted me.  He banged my head against the wall and bars and slammed me on the ground for no reason.  Officer Lane and Officer Lowke are both witnesses and will write statements.  I want to file charges and file a lawsuit against the County.  I need to talk to Internal Affairs.

(D.E. 48-1, p. 3).  There is no response to the October 31, 2013 ICF.

On January16, 2014, Plaintiff filed an ICF with the subject matter identified as "GRIEVANCE OFFICER."  (D.E. 48-1, p. 4).  Plaintiff noted that he had been assaulted by Officer White on October 29, 2013, and that he had filed a grievance that same date. (D.E. 48-1, p. 4).  He continued:

> …I [saw] Sgt. Recia (C.I.D.) at the Sheriff's Office.  I picked Officer Coti White out of a line-up…This assault was on camera…and I have Officer Lane and Officer Lowke as witnesses.  They both wrote statements on my behalf.  I want to know what is going on.  I do want to file charges…and file a lawsuit.  Please respond!

(D.E. 48-1, p. 4).

On January 17, 2014, Patricia Gamez, the Nueces County officer responsible for addressing grievances, responded to Plaintiff's January 16, 2014 ICF stating: "This matter was turned over to CID-request forwarded to Sgt. Bedia."  (D.E. 48-1, p. 4).  On that same date, Sergeant Bedia replied:

> Case No. 13006747 was filed with the Nueces County District Attorney's office.  On 11/15/13, I met with Nueces County D.A. Mark Skurka and A.D.A. Lorena Whitney and after review of the case by them the case was declined due to insufficient evidence.

(D.E. 48-1, p. 4).

### C. The Investigation of the October 29, 2013 Use of Force.

By Interoffice Memorandum dated October 29, 2013, Sergeant Gonzalez reported to Lieutenant C. Gomez that on October 29, 2013, at approximately 2:35 p.m., Plaintiff was seeking to speak to officials in positions of authority. (D.E. 48-2, p. 1). Sergeant Gonzalez interviewed Plaintiff who told him about the assault, and Sergeant Gonzalez observed the bump on Plaintiff's forehead and escorted Plaintiff to 2nd floor Medical. (D.E. 48-2, p. 1). Plaintiff indicated that his injuries were not too painful, but he wanted them documented. (D.E. 48-2, p. 1). Sergeant Gonzalez instructed Officers T. Lowke and T. Lane to each provide a witness statement. (D.E. 48-2, p. 1). After reading Officer Lowke's statement, Sergeant Gonzalez immediately called Officer White and questioned him about the incident and inquired why he had not filed a written report. (D.E. 48-2, p. 1). Officer White reported he had to leave for a family event and stated he would file the report the next morning. (D.E. 48-2, p. 1). Sergeant Gonzalez then notified Assistant Chief McKenzie of the incident. (D.E. 48-2, p. 1).

By Interoffice Memorandum dated October 30, 2013, Assistant Chief McKenzie ordered Lieutenant C. Gomez to have Officer White respond to Officer T. Lowke's statement. (D.E. 48-2, pp. 2-3). Officer Lowke testified:

> On 10/29/13 at approximately 14:30, Inmate Estrada, Chris was being escorted back to unit 4B after an attorney visit on 4th floor by Officer J. Coti White. As Officer Coti White and Inmate approached the Northside crash gate, I heard a commotion, when I turned and witnessed Officer Coti White holding Inmate Estrada by his arms behind his back, and forced him onto the floor. As I then walked around the picket, Officer Coti White

stood up and allowed Inmate Estrada to stand up on his own power, and return to unit 4B, which he did, without further incident.

(D.E. 48-2, p. 3).

On October 30, 2013, Officer White gave the following written statement:

This memo is to advise you that I had a "use of force" incident with inmate Christopher Estrada of which I did not inform yourself [Lieutenant C. Gomez] or Sgt. A. Gonzalez.

At no time did I attempt to hide the fact that I had the incident, as I made sure *the grievance* that inmate Christopher Estrada wrote was turned in.

Right after the incident, Officer Cantu and I escorted a MAX prisoner to intake from fingerprinting.  When the task was complete, it was well after 15:20 and I left the building to take care of some family obligations.

(D.E. 44-3, p. 18) (emphasis added).

## IV.   SUMMARY JUDGMENT STANDARD.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  *Id.*  Furthermore, "affidavits

shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).   Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## V.    DISCUSSION AND ANALYSIS.

Defendant White moves to dismiss Plaintiff's excessive force claim against him on the grounds that Plaintiff failed to exhaust properly the Nueces County Jail's administrative grievance process such that he is barred from proceeding with his federal lawsuit against him. The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S. C. *§* 1997e(a).

Plaintiff is required under § 1997e(a) to exhaust administrative remedies before filing suit. *See* 28 U.S.C. § 1997e(a); *Jones v. Bock,* 549 U.S. 199, 202 (2007); *Johnson v. Johnson,* 385 F.3d 503, 515 (5th Cir. 2004). Proper exhaustion is required, meaning that the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules. *Woodford v. Ngo,* 548 U.S. 81, 89-95 (2006). Because exhaustion is an affirmative defense, the Defendant has the burden to demonstrate that Plaintiff failed to exhaust available administrative remedies and is required to establish "beyond peradventure all of the essential elements of the

defense of exhaustion to warrant summary judgment" in his favor.  *Dillon v. Rogers,* 596

F.3d 260, 266 (5th Cir. 2010).[3]

The Nueces County Jail Inmate Rules and Regulations provide:

21.0   <u>INMATE GRIEVANCE PROCEDURE</u>

21.01   Inmates are allowed to file a grievance anytime they allege that they
have been subjected to:

1.   Violation of civil rights;
2.   Criminal Acts;
3.   Unjust denial or restriction of inmate privilege without
just cause;
4.   Prohibited act by facility staff.

21.02   The Texas Commission on Jail Standards Rule § 283.3 states that the
Grievance Plan supplements, but DOES NOT REPLACE any
informal grievance procedure.  Therefore, <u>before filing a grievance,
inmates should attempt an informal resolution</u>.    The Inmate
Grievance Procedure posted in each unit details the proper steps to
follow.

21.03   An I.G. Investigator will research every grievance, and appropriate
corrective action will be taken.    However, you will receive an
interim, written report within 15 days and a complete report will be
issued to the inmate within 60 days and also filed for access by the
Sheriff and Administration.

21.04   An inmate request form is not a formal grievance form.    If the
grievance concerns allegations of assault by a county employee,
**then write straight to the I.G. Office.**  If the matter concerns an
inmate wishing to press charges on another inmate due to assault,
then write directly to C.I.D. Grievances of an emergency nature will
be addressed upon receipt.    If injured, first notify medical staff
immediately.

(D.E. 44-1, p. 16) (emphasis in original).

---

[3] In *Dillon,* the Fifth Circuit joined the Seventh, Ninth, and Eleventh Circuits and held factual disputes
concerning exhaustion may be resolved by the judges.  *Id.* at 271.

In addition to the procedures set out in the Handbook, Defendant offers the affidavit of Daniel Perez, the Jail's Assistant Chief Deputy for Administration, who offers two typed pages that he identifies as the Jail's "Grievance Procedure policy." (D.E. 44-2, p. 1).  Chief Deputy Perez does not state where this policy is maintained, whether or not it is provided to the jail inmates, or whether it is part of a larger document, as it appears to be, as the portion provided to the Court is labelled "Section VI."  (D.E. 44-2, p. 2).  Section VI has five subparts.  (D.E. 44-2, pp. 2-3).  Section 6.0 sets forth grievance procedures.  (D.E. 44, p. 2).  To file a grievance, an inmate must request an inmate grievance form by submitting an inmate communication form.  (D.E. 44, p. 2). Next,

> If it has been determined that the complaint is a grievance the inmate will be issued a grievance number and the grievance will be answered within fifteen (15) working days.  An interim answer will be received within 15 days and a complete answer in 60 days as per TCJS [Texas Commission on Jail Standards].
>
> The form, which is self-explanatory, will be filled out by the inmate, and returned to the grievance officer for processing.  The form consists of five copies:[4]

|            |   |                   |
|------------|---|-------------------|
| -WHITE     | : | RECORDS           |
| -YELLOW    | : | RESPONSE          |
| -PINK      | : | INMATE            |
| -BLUE      | : | QUALITY ASSURANCE |

(D.E. 44-2, p. 2).

---

[4] It is assumed that the fifth "copy" referenced is the original.

Section 6.0 provides further that: "THIS GRIEVANCE PROCEDURE SHALL BE POSTED TO THE BULLETIN BOARD OF EVERY UNIT READILY VISIBLE TO ALL PRISONERS IN ENGLISH & SPANISH." (D.E. 44-2, p. 2). Finally, section 6.0 provides that a jail inmate may appeal a grievance by submitting an Inmate communication Form (ICF) to Jail Administration. (D.E. 44-2, p. 2).

Section 6.01 provides that the Nueces County Sheriff's Department will not condone retaliation against an inmate availing himself of the grievance procedure. (D.E. 44-2, p. 3). Section 6.02 states that there will be administrative review of all procedures "upon legitimate requests." (D.E. 44-2, p. 3). Section 6.03 provides that grievances are made a part of an inmate's permanent record. (D.E. 44-2, p. 3). Section 6.04 notes that, if an inmate's grievance is substantiated, any lost good time suffered will be reinstated. (D.E. 44-2, p. 3). Finally, section 6.05 provides that only the Sheriff/Operator or his designee may release grievance information to employees and inmates. (D.E. 44-2, p. 3).

Plaintiff testified that he never saw a posted copy of the Section VI Grievance Policy. In addition, he was never given a copy of the Nueces County Jail Inmate Rules and Regulations Handbook.

Dealing with a claim like Plaintiff's, the Seventh Circuit found that "[a] prisoner's lack of awareness of a grievance procedure does not excuse compliance." *Twitty v. McCoskey*, 226 Fed. Appx. 594, 596 (7th Cir. 2007) (unpublished). Likewise, the Sixth Circuit has rejected an inmate's argument that exhaustion was unavailable to him because he was unaware of the system. *Brock v. Kenton County,* 93 Fed. Appx. 793 (6th Cir. 2004) (unpublished). The Tenth Circuit ruled similarly. *Gonzales-Liranza v. Naranjo,*

76 Fed. Appx. 270 (10th Cir. 2003) (unpublished) (rejecting prisoner's claim that he was unaware of procedures and thus could not utilize them).  The Tenth Circuit reasoned: "[t]hus, even accepting plaintiff's allegation that that he was unaware of the grievance procedures, there is no authority for waiving or excusing compliance with PLRA's exhaustion requirement." *Id.* at 273.  In that case, the prisoner claimed that he had not been given an inmate handbook describing the procedure, but he did not claim the correctional facility did anything to frustrate or prevent him from utilizing the grievance procedures. *Id.* at 273.  The Eighth Circuit has also explained, "[s]ection 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him.  The statute's requirements are clear: if administrative remedies are available, the prisoner must exhaust them." *Chelette v. Harris,* 229 F.3d 684, 688 (8th Cir. 2000).

The Fifth Circuit has long recognized the importance of ensuring that inmates have avenues for discovering the procedural rules governing their grievances.  *Dillon v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010) (citing *Alexander v. Tippah County,* 351 F.3d 626, 630 (5th Cir. 2003) (per curiam) (premising ruling that remedies were available on prisoner's knowledge of grievance procedures); *Ferrington v. La. Dep't of Corrs.,* 315 F.3d 529, 532 (5th Cir. 2002) (per curiam) (premising ruling that remedies were available on fact that prisoner "was well aware of the general procedural requirements described in inmate handbook").  However, the Court has held ignorance of the exhaustion requirement does not excuse a plaintiff's failure to exhaust.  *Gonzalez v. Crawford,* 2011 WL 1057577 (5th Cir. 2011) (unpublished).

14 / 17

In this case, Plaintiff admits that, although he was never given a Jail Handbook nor did he personally observe the posted Section VI Grievance Policy in the Jail, he was aware of the grievance process and claims that he attempted to exhaust it by filing first the ICF on October 29, 2013.  According to Plaintiff, based on his understanding of the grievance policy, after he filed his ICF, the grievance officer Patricia Gamez, was then required to provide him with a proper "grievance form," the form consisting of five color-coded copies, to advance his claim, but she never did so.

In her affidavit, Ms. Gamez testifies that, to start the grievance process, an inmate must write to the duty sergeant and attempt to resolve the problem."  (D.E. 48-1. p. 1).  If the problem is not resolved after receiving a reply or within a reasonable time, the inmate must write the shift Lieutenant.  (D.E. 48-1. p. 1).  Here, Plaintiff submitted his first ICF concerning a grievance against a correctional officer on October 29, 2013.  (D.E. 48-1, p. 1).  He did not receive a response.  On October 31, 2013, he submitted a follow-up ICF; this communication was not answered either.  (D.E. 48-1, p. 3).  Ms. Gamez states that, if the problem is not resolved after speaking with the shift Lieutenant, the inmate must write to the jail captain to attempt to resolve the problem.  (D.E. 44-3, p. 1).  Then if the problem is still unresolved after receiving a reply from the captain, the inmate must request an inmate grievance form from the grievance officer.  (D.E. 44-3, p. 1).  Ms. Gamez concludes that Plaintiff never filed a "formal grievance" during his detention at the Jail.  (D.E. 44-3, p. 2).

Ms. Gamez's own affidavit is confusing and misquotes the Jail Handbook as well as the Section VI Grievance Policy.  The Jail Handbook, § 21.01, provides that inmates are "allowed to file a grievance **anytime** they allege they have been subjected to: (1) Violation of Civil Rights; (2) Criminal Acts; … (4) Prohibited act by facility staff." (D.E. 44-1, p. 16).  It does not state that the inmate must first exhaust a three-step informal resolution process that does not involve the grievance officer and of which no official record is maintained.  In addition, § 21.04 provides that, if a grievance concerns allegations of assault by a County employee, then the grievance is to go straight to the grievance investigator.  That is, under its own rules, Plaintiff's October 29, 2013 ICF complaining about Officer White should have gone to Ms. Gamez and she should have issued Plaintiff a formal complaint form.

Section VI is vague and Officer Gamez's affidavit makes no attempt to clarify or explain the procedures set forth therein.  Section VI provides that:

> ***If it has been determined that the complaint is a grievance***, the inmate will be issued a grievance number and the grievance shall be answered within fifteen (15) working days.

(D.E. 44-2, p. 2) ( emphasis added).

This paragraph fails to identify ***who*** determines whether the complaint is a grievance.  It also introduces the term "complaint," which has not been used before, because in the Jail Handbook, inmates are instructed to file ICFs, not "complaints".  In short, Nueces County appears to have two grievance procedures with conflicting provisions and Ms. Gamez's affidavit stating that Plaintiff failed to file a "formal

grievance" ignores his repeated ICFs and her duties, as grievance officer, to issue Plaintiff a formal grievance form.

Plaintiff's ICF forms clearly stated that he wanted an investigation into the incident and that he wanted charges filed against Officer White. Plaintiff's allegations, combined with his noted injuries, the statement of Officer Lowke, and the D.A.'s investigation, were sufficient notice to Defendant White regarding Plaintiff's excessive force claims against him. *See Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004) (discussing how much detail is necessary in a prisoner's grievance and noting that the main purpose of exhaustion is to provide notice of the complaints to prison officials so that they might have an opportunity to address those complaints first). Defendant White fails to establish that Plaintiff did not exhaust his administrative remedies.

## VI.   CONCLUSION.

For purposes of section 1997e(a), Plaintiff sufficiently exhausted his administrative remedies and placed Defendant White on notice of his excessive use of claim against him. Accordingly, Defendant White's motion for summary judgment to dismiss for failure to exhaust (D.E. 44) is **DENIED.**

ORDERED this 21st day of May, 2015.

Jason B. Libby
United States Magistrate Judge